UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AARON BLOCKER,

    Plaintiff,

v.

THE CITY OF CHICAGO, et al.,

    Defendants.

No. 17 CV 00055

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Aaron Blocker, proceeding pro se, asserts several civil rights claims against the City of Chicago, city officials, and police officers. The defendants move to dismiss all claims against them. Blocker responded with a motion for summary judgment. For the following reasons, defendants' motion to dismiss is granted and Blocker's motion for summary judgment is denied.

**I.    Legal Standards**

Courts must construe pro se complaints liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). The essence of liberal construction is to give a pro se plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable. *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998). But to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but

the court need not accept legal conclusions or conclusory allegations. *Id*. at 678–79. Blocker's affidavit (and exhibits) submitted with his complaint are considered part of his complaint. Fed. R. Civ. P. 10(c).

## II. Background

Plaintiff Aaron Blocker alleges that shortly after he arrived at his mother's home on the evening of August 8, 2014, Chicago police officers Scott Digrazia, Thomas Fennell, and others entered (without knocking) to execute a search warrant. When the officers entered the residence, Blocker was coming out of the bathroom. An officer detained Blocker, slammed him to the ground, put handcuffs on him, and then dragged Blocker from the hallway to the living room to search him. A few minutes later, Officers Digrazia and Fennell escorted Blocker to a rear room of the residence. Once there, Officer Fennell asked Blocker if there was anything illegal in the house, and Blocker responded "No, not to my knowledge." Officer Digrazia then threatened that if Blocker did not cooperate, they would "tear his mothers' residence apart from top to bottom" and whatever they found would be charged to Blocker. Officer Fennell then escorted Blocker to the backyard while Officer Digrazia and others searched the home, recovering several "illegal items" throughout the residence and causing destruction to the structure of the residence and personal property located within it. Officer Fennell told Blocker that he would be charged for these illegal items and attempted to coerce Blocker into providing information about any known illegal activity that would lead to an arrest, in exchange for Blocker's freedom.

2

Blocker was then transported to District 005 and placed in a cold holding cell for several hours without heat, a blanket, or proper clothing. Before being fingerprinted, Blocker demanded to be informed of the charges against him, to place a call to his attorney or family, and to be taken to the nearest judge before being fingerprinted, but Officer Digrazia became frustrated with Blocker and placed him in a colder holding cell for twelve additional hours for "refusal to be processed." Blocker finally agreed to be fingerprinted and processed in exchange for two phone calls, adequate clothing, and a warmer cell. Blocker was fingerprinted and transported to Cook County Jail, where he remained until his release on December 1, 2015, after a Cook County Judge ruled that there was no probable cause for the issuance of the search warrant and that the good faith exception did not apply. Blocker's motion for a Certificate of Innocence under 735 ILCS 5/2-702 was denied in March 2016.

In September 2014, Blocker sent a complaint to the Independent Police Review Authority about Officers Digrazia and Fennell. Two months later, Blocker filed a complaint with the Chicago Police Department Internal Affairs Division, alleging that Officers Digrazia and Fennell engaged in misconduct.[1] Sergeant Mark Lamberg was responsible for investigating Blocker's complaint. Over the next two years, Blocker and his family repeatedly and unsuccessfully attempted to contact

---

[1] Although Blocker alleges that he filed a complaint with IPRA in September 2014, [31] ¶ 7, and a complaint with the Internal Affairs Division in November 2014, [30] ¶ 39, he received a letter from Sergeant Lamberg in October 2014 informing him that the Internal Affairs Division was in receipt of his complaint and would investigate. [31] at 8. (Bracketed numbers refer to entries on the district court docket.)

Sergeant Lamberg about the status of the investigation, with Blocker making a final attempt in December 2015.

In May 2016, Blocker sent Anna Valencia, the Chicago City Clerk, a claim seeking $600,000 in compensation due for the police officers' alleged acts in August 2014. A few days later, Blocker received a letter from Patrick Harmon, a City claims adjuster, stating that his claim could not be processed. Blocker alleges that Harmon said his claim could not be processed because the statute of limitations had passed. [30] ¶ 42. However, the letter (attached to Blocker's complaint) stated that the Claims Unit received Blocker's claim but that it did not fall within the three types of claims accepted by the Claims Unit, which were: (1) motor vehicle accidents involving personal injury or property damage; (2) general liability claims involving property damage, such as vehicle damage from a road condition; and (3) general liability claims involving personal injury, such as a fall on public property. [31] at 73. On Blocker's summary of events submitted with his claim, a post-it note stated "1 year statue [sic] of limitation." [31] at 77; [36] at 24.

Blocker brought suit in January 2017, [1], and later amended his complaint, [30], bringing claims against Officers Digrazia and Fennell for his treatment during the search, his arrest, and detention (Counts I and II); a *Monell* claim against the City of Chicago and Chicago Police Superintendent Eddie Johnson (Count III); a Fourteenth Amendment due process claim against Sergeant Lamberg, Anna Valencia, and Patrick Harmon (Count IV); and a tort claim under Illinois law consisting of multiple causes of action against all defendants (Count V). Blocker also

submitted an affidavit in support of his amended complaint. [31]. Defendants move to dismiss all claims against them. [34].

### III. Motion to Strike

Blocker responded to the defendants' motion by moving for summary judgment and submitting several exhibits, [36], as well as a statement of undisputed facts. [35]. Because discovery has not yet commenced, summary judgment is premature, and I deny Blocker's motion for summary judgment. Instead, his motion for summary judgment and supporting materials are construed as his opposition brief to the defendants' motion to dismiss. Although the defendants seek to strike Blocker's submission as unresponsive to their motion, I decline to strike it because Blocker addresses several of the defendants' arguments for dismissal.

### IV. Analysis

#### A. Claims Against Officers Digrazia and Fennell

Blocker brings federal civil rights claims under § 1983 against Officers Digrazia and Fennell for unreasonable search and seizure, false arrest, false imprisonment, and malicious prosecution (Counts I and II). Blocker also brings state-law claims against the officers for false arrest, false imprisonment, and for violating the Illinois Constitution, Illinois statutes, and City ordinances (Count V). Defendants seek to dismiss Blocker's claims as barred by the statute of limitations. Because the statute of limitations is an affirmative defense that a plaintiff need not anticipate or plead around, a motion to dismiss for failure to comply with the statute of limitations should be granted only where the allegations of the complaint

5

itself set forth everything necessary to satisfy the affirmative defense. *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014). Most of Blocker's claims are time-barred.

Federal law governs the accrual date for constitutional torts, but state statutes of limitations and tolling doctrines apply once accrual has been determined. *Wallace v. City of Chicago*, 440 F.3d 421, 425 (7th Cir. 2006) (citing *Hardin v. Straub*, 490 U.S. 536, 538–39 (1989)), *aff'd sub nom. Wallace v. Kato*, 549 U.S. 384 (2007). In § 1983 actions, federal courts sitting in Illinois borrow the state's two-year statute of limitations for personal injury violations. *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (citing 735 ILCS 5/13-202). Illinois local governments and their employees, however, benefit from a one-year statute of limitations for damages-seeking civil actions against them. *Id.* (citing 745 ILCS 10/8-101); *see* 745 ILCS 10/8-101 ("No civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued."). But this one-year period only applies to state-law claims joined with a § 1983 action. *Williams*, 399 F.3d at 870. Blocker's original complaint was filed on January 4, 2017. [1]. This means that any federal civil rights claims that accrued before January 4, 2015, are time-barred, and any state-law damages actions that accrued before January 4, 2016, are time-barred.

1. *False Arrest, False Imprisonment, and Unreasonable Search and Seizure*

"The general rule is that a § 1983 claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Serino v. Hensley*, 735 F.3d 588, 591 (7th Cir. 2013) (marks omitted). For false arrest and false imprisonment claims, the statute of limitations "begins to run 'at the time the claimant becomes detained pursuant to legal process'—that is, when the arrestee is bound over by a magistrate or arraigned on charges. *Id.* (quoting *Wallace*, 549 U.S. at 397). Blocker was arrested on August 8, 2014, and arraigned on September 16, 2014. [31] at 22; [36] at 62. To be timely, Blocker had to file his § 1983 claims for false arrest and false imprisonment within two-years of his arraignment, so by September 16, 2016. These claims are time-barred and are dismissed. The § 1983 claim under the Fourth Amendment for unlawful search or seizure is also untimely because it accrues "at the time of (or termination of) the violation." *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) (citing *Wallace*, 549 U.S. 384). Blocker alleges that he was arrested and searched on August 8, 2014—he needed to file that claim by August 8, 2016.

The continuing violation doctrine and equitable tolling are inapplicable in these circumstances. The continuing violation doctrine applies to extend the statute of limitations period for a cumulative harm, but it does not apply to "discrete acts" that are "wrongful independent of other events," *Moore v. Burge*, 771 F.3d 444, 447 (7th Cir. 2014), and a defendant's failure to reverse the ongoing effects of a tort does not restart the period of limitations. *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir.

7

2013). "Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim," *Shropshear v. Corporation Counsel of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001), for example if a plaintiff is unable to determine who caused his injury, if the plaintiff has received inadequate notice, or if the appointment of counsel is pending. *Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006).

Here, Blocker alleges that he was harmed by a discrete act (i.e., his arrest on August 8, 2014). He concedes that since August 8, 2014, he knew that his rights were violated, [36] at 9, but argues that he needed time to prove it and his innocence and that he did not know until later that the search warrant was not supported by probable cause. But probable cause to search the house is different than probable cause to arrest him. Blocker did not need to wait until the state court granted his motion to suppress, and (with the exception of malicious prosecution) exhaustion of state-court criminal proceedings is not necessary to bring a § 1983 claim (unlike habeas corpus). *See Savory*, 469 F.3d at 674. Blocker argues that the statute of limitations were equitably tolled because he alleges that in November 2014, he began filing a series of lawsuits and claims relating to his criminal proceedings, including: a petition for writ of habeas corpus with the Illinois Supreme Court to challenge the legality of his arrest and detention (November 2014), a petition for writ of mandamus in federal court (February 2015), a motion to suppress the search warrant in the underlying criminal action (June 2015), and a

petition for a Certificate of Innocence (March 2016). [30] ¶¶ 76–79. Blocker also contends that he complained to the police department's Internal Affairs Division about the officers and later attempted to receive compensation through the City Clerk's office, which delayed him from filing his claim. His earlier lawsuits and legal actions attempted to vitiate the underlying criminal proceedings against him, not to seek redress for the alleged civil rights violations or to identify who allegedly violated his civil rights. And while he may have wanted to pursue an internal investigation against them, he did not need an internal investigation, the results of an investigation, or a denied settlement demand in order to know who caused his injury and bring suit. The continuing violation doctrine and equitable tolling do not apply in these circumstances.

2. *Malicious Prosecution*

Blocker's only remaining federal claim against the officers is a § 1983 claim for malicious prosecution. The Fourth Amendment governs at least some claims for unlawful pretrial detention even after the legal process has begun. *Manuel v. City of Joliet*, 137 S.Ct. 911, 920 (2017). The particular contours of such a Fourth Amendment claim, including the timing of its accrual, have not yet been established. *Id.* at 920–22. But, at a minimum, I assume that prolonged pretrial detention without probable cause (including a judicial finding of probable cause based solely on false evidence supplied by police officers), violates the Fourth Amendment. *See id.* at 919.

The amended complaint does not state a Fourth Amendment claim for unlawful pretrial detention.[2] Blocker alleges that there was a later judicial determination that the officers lacked probable cause for the warrant to search his mother's residence (because the information supporting the warrant was limited to alleged drug dealing near the rear of the residence, not inside), but he does not allege that the officers lacked probable cause to *arrest* him after they found "illegal items" in the house. *See, e.g., Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999) ("The lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant."). Blocker also alleges, in his separate motion for summary judgment, that there was false testimony at his preliminary hearing (about Blocker's location in the residence at the time of the officers' entry). [36] at 7, 47. But there is no allegation that this false testimony supplied the probable cause to justify Blocker's seizure. Even granting Blocker's pro se filings a favorable construction, it appears that he concedes that the police found a gun and cocaine in the residence, he was present (in the bathroom, not the living room), and there was mail connecting him to the residence. [30] ¶¶ 19, 28; [31] at 16–17 (¶¶ 14–15), 30 (¶ 2); [35] ¶ 13; [36] at 50–52. Under these circumstances, the

---

[2] The defendants only moved for dismissal of the malicious prosecution claim on the basis of the statute of limitations, but "[s]ua sponte 12(b)(6) dismissals are permitted, provided that a sufficient basis for the court's action is evident from the plaintiff's pleading." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). It is not readily apparent that Blocker's Fourth Amendment claim related to his pretrial detention is untimely. If akin to malicious prosecution, then the claim did not accrue until the termination of criminal proceedings against him (December 1, 2015), *Manuel*, 137 S.Ct. at 921, and it would not be time-barred.

arresting officers could not be liable for a Fourth Amendment violation for Blocker's detention even though the search warrant was later found to be invalid and the case against Blocker was dismissed.

### 3. *State-Law Claims*

Blocker's state-law claims against the officers are untimely. Illinois local governments and their employees benefit from a one-year statute of limitations for damages-seeking civil actions against them. *Williams*, 399 F.3d at 870 (citing 745 ILCS 10/8-101). To be timely, Blocker's cause of action against these officers had to accrue on or after January 4, 2016. In Illinois, a cause of action accrues when the plaintiff knows or reasonably should know of an injury and that the injury was wrongfully caused. *Clay v. Kuhl*, 189 Ill.2d 603, 608 (2000). Although this issue is generally resolved as a question of fact, it may be determined by the court as a matter of law when the answer is clear from the pleadings. *Id*. Blocker's state-law claims against the officers arise solely from the events surrounding his arrest and processing on August 8, 2014 (and possibly a few days thereafter). He alleges that he believed his rights were being violated in August 2014, but he did not sue until January 2017. Blocker's state-law claims against the officers are untimely.

Counts I, II, and V against Officers Digrazia and Fennell are dismissed as untimely as to the false arrest, unlawful search and seizure (Counts I and II), and state-law (Count V) claims. The malicious prosecution claim in Count II is dismissed for failure to state a claim.

**B.     Claims Against the City of Chicago and Superintendent Johnson**

Blocker brings a § 1983 *Monell* claim against the City of Chicago and Chicago Police Superintendent Johnson (Count III), alleging that the city and Johnson have a custom and policy of failing to train and monitor the City's police officers and of failing to correct officers' constitutional abuses. The *Monell* claim is subject to the two-year statute of limitations applicable to § 1983 actions brought in Illinois, *Williams*, 399 F.3d at 870, and accrued when Blocker knew or should know that his constitutional rights were violated. *Serino*, 735 F.3d at 591. Blocker's *Monell* claim is tied to the underlying allegations that Officers Digrazia and Fennell violated his constitutional rights on August 8, 2014 (and possibly for a day or two after, while he awaited processing). But he did not file his complaint until January 4, 2017, more than two years later. Therefore, his *Monell* claim is time-barred.

Blocker also asserts a state-law negligence claim against the City and Johnson, alleging that they were negligent in the hiring and supervision of Officers Digrazia and Fennell (Count V). This claim is subject to the one-year statute of limitations for local government employees, 745 ILCS 10/8-101, and therefore is time-barred. Blocker was aware in August 2014 of the officers' alleged misconduct towards him, [36] at 9, but his complaint was not filed until January 2017.

Counts III and V against the City of Chicago and Superintendent Johnson are dismissed as untimely.

### C. Claims Against Sergeant Lamberg, Anna Valencia, and Patrick Harmon

Blocker brings a § 1983 procedural due process claim against Sergeant Lamberg, Anna Valencia, and Patrick Harmon, alleging that they were negligent in performing their duties when Blocker sought redress and deprived him of due process (Count IV). Defendants contend that Blocker failed to state a procedural due process claim.

The Due Process Clause of the Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a procedural due process claim, Blocker must allege that a state actor deprived him of a constitutionally protected interest without due process of law. *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 616 (7th Cir. 2002) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Therefore, "[a]n essential component of a procedural due process claim is a protected property or liberty interest." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (quoting *Minch v. City of Chicago*, 486 F.3d 294, 302 (7th Cir. 2007)). "Although the Fourteenth Amendment protects property rights, it does not create them. Instead, property rights 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Frey Corp. v. City of Peoria*, 735 F.3d 505, 509–10 (7th Cir. 2013) (quoting *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). To state a claim, Blocker must allege that he has "a legitimate claim of entitlement" to the

protected interest, not just a unilateral expectation of it. *Khan*, 630 F.3d at 527 (quoting *Roth*, 408 U.S. at 577).

Blocker alleges that Sergeant Lamberg failed to adequately investigate his complaint against Officers Digrazia and Fennell. But a police investigation into a citizen's complaint is not a constitutionally protected property or liberty interest, as the Due Process Clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989); *see also Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) (A plaintiff "does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction."). Blocker also argues that Sergeant Lamberg's alleged failure to investigate violated several city ordinances and therefore violated due process. But due process does not depend on violations of local or state law. *See Garcia v. Kankakee Cty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002) ("[A] unit of state or local government does not violate the federal Constitution just because it violates a state or local law."*).*

Blocker argues that he has stated a due process claim against the City Clerk, and the City claims adjuster, because in May 2016 he sent the Clerk a demand for compensation due to the events surrounding his arrest and the claims adjuster responded that his claim could not be processed because of the statute of limitations. Blocker contends that, under Chicago Municipal Code § 2-12-060, the

Clerk was required to present a statement of his claim against the City to the City's finance committee. The Chicago code does provide that "[t]he city clerk shall deliver without delay to the committee on finance of the city council all statements of claims against the city which [s]he shall receive from the members of the public at large." MCC § 2-12-060. But Blocker alleges that he submitted a claim to the City Clerk for compensation arising out of the police officers' alleged tortious acts in August 2014, and his claim specifically stated that he was attempting to settle his claims against the officers before bringing suit. [31] at 77. Legal claims and settlement demands against individual officers must go through the City's Corporation Counsel, not the City Clerk. *See* MCC §§ 2-60-020, 2-60-080. Blocker has not cited any city ordinance allowing the City Clerk to process a settlement demand for civil rights and tort claims against individual officers. Moreover, the claim adjuster's letter does not mention the statute of limitations but merely responds that Blocker's claim—essentially his settlement demand—was not the type of claim processed by the City Clerk's office. Even if the claims adjuster added a post-it note to Blocker's claim stating "1 year statute of limitations," that is not a misrepresentation or a violation of due process because any state-law claims against the officers *were* subject to a one-year statute of limitations under 745 ILCS 10/8-101. Blocker's due process claim fails to allege that he had "a legitimate claim of entitlement" to compensation from the officers' actions (especially given that the statute of limitations for state-law claims against the officers had passed in August 2015), or how the City Clerk's or claim adjuster's actions deprived him of that

property right in violation of due process (which requires notice and a meaningful opportunity to be heard). Count IV against Sergeant Lamberg, Valencia, and Harmon is dismissed for failure to state a claim, and amendment would be futile because Blocker had no cognizable property interest in compensation that was deprived by the Clerk and claims adjuster.

In Count V, Blocker also lists several alleged torts against Lamberg, Valencia, and Harmon, including obstruction of justice, violation of due process, fraudulent concealment, and violations of Chicago Municipal Code §§ 2-12-060 (claims against the city), 2-84-280 (violation of duties), 2-84-430 (complaints against police), 2-156-005 (Code of Conduct), 2-156-018 (duty to report corrupt or unlawful activity). These allegations are entirely conclusory and, as a result, do not state a claim under any of these theories.[3] In any event, I decline to exercise jurisdiction over these state-law claims in the absence of a federal claim. *See RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012).

Ordinarily, a plaintiff should be given at least one opportunity to try to amend his complaint before the entire action is dismissed. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015). But here, amendment would be futile as to the federal claims. Most of them are

---

[3] The claims against Superintendent Johnson and the City Clerk are also dismissed for an additional reason. "Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Suing Johnson and Valencia in their official capacities is duplicative of suing the City of Chicago, which is already a defendant. The claims against Johnson and Valencia are dismissed for this additional reason.

indisputably time-barred, and the federal malicious prosecution and due-process claims could not be restated, because the existing, detailed allegations do not support a Fourth Amendment pretrial detention claim and there is no cognizable property interest at stake.

## V. Conclusion

Defendants' motion to dismiss, [34], is granted. Plaintiff's motion for summary judgment, [36], is denied. The federal claims are dismissed with prejudice, as are the untimely state-law claims. The remaining state-law claims are dismissed without prejudice. Enter judgment and terminate civil case.

ENTER:

                                          Manish S. Shah
                                          United States District Judge

Date: August 2, 2017